REESE MARKETOS LLP
Margaret D. Terwey (CA SBN 322798)
margaret.terwey@rm-firm.com
Pete Marketos (*pro hac vice* forthcoming)
pete.marketos@rm-firm.com
Tyler J. Bexley (*pro hac vice* forthcoming)
tyler.bexley@rm-firm.com
William J. Hamilton (*pro hac vice* forthcoming)
will.hamilton@rm-firm.com
Alexander M. Nowakowski (*pro hac vice* forthcoming)
alex.nowakowski@rm-firm.com
750 N. Saint Paul St., Suite 600
Dallas, Texas 75201
Telephone: (214) 382-9810

*Attorneys for Plaintiffs AT&T Teleholdings, Inc. and AT&T Wireline Holdings, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AT&T TELEHOLDINGS, INC. and AT&T WIRELINE HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:26-cv-13704<br><br>**COMPLAINT:**<br><br>**1. False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B);**<br>**2. False Advertising in Violation of Cal. Bus. & Prof. Code § 17500, *et seq.*; and**<br>**3. Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***<br><br>**Demand for Jury Trial** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

AT&T Teleholdings, Inc. and AT&T Wireline Holdings, LLC (collectively, "AT&T") bring this action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, against Comcast Cable Communications, LLC ("Comcast") due to Comcast's deceptive advertising, which falsely suggests that its "Fiber-Powered" internet and WiFi reach customers' homes entirely over fiber optic cable.

**INTRODUCTION**

1. This case challenges Comcast's false advertising campaign for its residential internet service, marketed under the Xfinity brand to consumers nationwide. At the center of that campaign is Comcast's claim that Xfinity Internet and its associated WiFi service are "Fiber-Powered."

2. That claim conveys to reasonable consumers the misleading impression that Xfinity Internet is a fiber-to-the-home service comparable to AT&T Fiber. In fact, the vast majority of Xfinity Internet runs over a hybrid fiber-coaxial ("HFC") network, where the critical "last mile" connection to the customer's home uses copper coaxial cable, not fiber.

3. Comcast deceives consumers by manipulating the word "fiber" in its advertising so it can tout its "Fiber-Powered" internet and obscure in its advertising the fact that its network connects to customers' homes using copper wire.

4. Comcast's website illustrates the sleight-of-hand that Comcast is performing by describing its hybrid-copper internet to consumers as "fiber-powered."

It tells consumers that "Fiber-powered internet is a type of broadband service for home internet that sends data as pulses of light through thin glass or plastic cables *instead of* electrical signals over copper wire."[1] Of course, that is not true for Comcast's supposedly "fiber-powered" internet that indeed sends electrical signals over copper wire for the critical last mile between the neighborhood node and the home.

5. Comcast's website then touts the benefits of "fiber-powered internet," namely, "speed and performance," "[l]ow latency for smoother online experiences," and "reliability" without any indication that those benefits are hampered by its use of copper cables, instead of fiber, for the critical last mile. Instead, it tells consumers that, unlike "Fiber to the Home (FTTH)," in which "[f]iber optic cable runs directly to the residence," its "Fiber to the Node (FTTN)" internet "still leverages fiber throughout much of the network while providing fast internet service to customers." Comcast knows that the difference matters to consumers and is aiming to mislead them.

6. Unlike AT&T, the overwhelming majority of Comcast's Xfinity Internet subscribers are connected to Comcast's network via the fiber-to-the-node only method. In other words, the homes of most Xfinity customers are directly connected to Comcast's network via copper coaxial cables.

[1] *What is Fiber-Powered Internet?*, XFINITY.COM, (last visited November 2, 2026), https://www.xfinity.com/hub/internet/fiber-powered-internet (emphasis added).

7. By referring to its hybrid fiber-copper service as "Fiber-Powered," Comcast blurs the distinction between fiber-to-the-home service, or 100% fiber, and Comcast's inferior hybrid copper-based service, deliberately appropriating the "fiber halo" in the internet services space to the detriment of consumers and competitors.

8. Comcast's "Fiber-Powered" claims are literally false or false by necessary implication. They are also impliedly false and misleading because they leave a substantial segment of reasonable consumers with the misleading impression that Xfinity's "fiber-powered" service delivers internet connectivity to consumers' homes through fiber alone, leaving out the copper-wire connection from the node to the home. The campaign deceives consumers, distorts competition, and appropriates the goodwill that AT&T's 100% fiber network has earned. AT&T seeks an injunction and damages.

## PARTIES

9. Plaintiff AT&T Teleholdings, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas.

10. Plaintiff AT&T Wireline Holdings, LLC is a Delaware limited liability company with its principal place of business in Dallas, Texas.

11. AT&T and its affiliates provide internet and telecommunications services to consumers throughout the United States, including in this District.

12. Defendant Comcast Cable Communications, LLC is a Delaware limited liability company with its principal place of business in Philadelphia, Pennsylvania.

13. Comcast markets and provides its residential internet service under the brand name "Xfinity." Comcast's Xfinity Internet service is one of the largest broadband services in the United States, and Comcast provides internet, cable, and telecommunications services nationwide.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1121 because AT&T asserts a federal claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a). This Court has supplemental jurisdiction over AT&T's related state-law claims under 28 U.S.C. § 1367 because those claims arise out of the same common nucleus of operative facts and form part of the same case or controversy as AT&T's federal claim.

15. This Court has personal jurisdiction over Comcast under the California long-arm statute, Cal. Civ. Proc. Code § 410.10, and the Due Process Clause. Because the California long-arm statute is coextensive with due process, the statutory and constitutional inquiries merge.

16. Comcast has purposefully availed itself of the privilege of conducting activities in California and purposefully directed its activities at this forum, such that it should reasonably anticipate being haled into court here. Comcast sells and provides Xfinity-branded residential internet service to a significant number of California consumers; maintains and services physical network infrastructure in California, including in this District; bills and collects revenue from California customers; and operates and directs California consumers to its website, through

which California consumers view the challenged "Fiber-Powered" claim and purchase service.

17. Comcast committed tortious acts in whole or in part in California by disseminating the false and misleading advertising at issue to California consumers. Comcast knew that this conduct would cause injury to AT&T, which operates and conducts business in California.

18. Comcast has established minimum contacts such that the maintenance of this action is reasonable and does not offend traditional notions of fair play and substantial justice. Comcast is a nationwide provider that litigates routinely and faces no meaningful burden in defending this action in a state where it operates a network and sells services. California has a strong interest in protecting its consumers and its resident businesses from deceptive advertising, and this District is an efficient forum because the relevant evidence, consumers, and injury are located here.

19. Alternatively, and in any event, Comcast is otherwise subject to jurisdiction in California by registering to do business and maintaining a registered agent in California.

20. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to AT&T's claims occurred in this District, including Comcast's dissemination of the challenged advertising to consumers and the resulting injury to AT&T's business, goodwill, and customer relationships.

21. Comcast's false claims are intended to reach consumers in this District. Comcast also provides internet services here and has profited, or likely will profit, from the challenged advertising.

## DIVISIONAL ASSIGNMENT

22. For purposes of intradistrict assignment under the Civil Local Rules, this Lanham Trademark Act action should be assigned on a district-wide basis.

## FACTUAL ALLEGATIONS

### A. AT&T and Comcast compete head-to-head for the same residential internet customers, and AT&T Fiber is the 100% fiber service Comcast's advertising misleadingly imitates.

23. AT&T is one of the nation's leading internet service providers and offers high-speed fiber internet ("AT&T Fiber") to residential and business consumers across the United States, including in the San Francisco area.

24. AT&T Fiber has received numerous third-party accolades for the speed and overall quality of its internet service. For example, Ookla's Speedtest Connectivity Report recently determined that "AT&T Fiber offered the Best Internet, and was the Fastest Fixed Network in the United States." *See* https://www.ookla.com/research/reports/united-states-speedtest-connectivity-report-h1-2026.

25. Comcast is one of the nation's largest internet service providers. Under the Xfinity brand, it competes with AT&T for internet customers, including in the same areas where AT&T offers fiber internet service.

26. Comcast's advertising directly targets consumers who might otherwise choose AT&T as their provider.

27. Consumers choosing a business or residential internet provider consider the underlying delivery technology material. Perceived speed, reliability, and latency of the services substantially affect consumer choice in internet service providers.

### B. Comcast's "Fiber-Powered" claims intentionally blur the line by leveraging fiber's "halo effect."

28. Xfinity's internet network is a hybrid fiber-copper internet service that Comcast calls "Fiber-Powered internet" and "Fiber-Powered WiFi." Comcast seeks to leverage fiber's "halo effect" by claiming its hybrid service is "powered" by fiber while hiding the fact that the critical "last mile" into customers' homes travels over copper wire.

29. Comcast's website has various ads that prominently advertise "fiber-powered" internet while burying in fine print—if any disclosure is included at all—that Xfinity's internet service is directly delivered to customers' homes via copper coaxial cables.

30. As of November 2, 2026, Comcast's website[2] features a promotional banner touting Xfinity's internet as "the most reliable, fiber-powered WiFi." However, Xfinity's promotional banner fails to disclose that Xfinity Internet is connected to customers' homes through copper wire, not fiber.

---

[2] *Xfinity Internet + Mobile Deals*, XFINITY.COM, (last visited November 2, 2026), https://www.xfinity.com/learn/deals/internet-and-mobile.




31. On the "Gig WiFi" section of its website, Comcast includes a prominent ad describing Comcast's internet as "Built for speed. Powered by fiber."[3] The sole disclosure is buried at the end of a long string of other disclosures in miniature font.




[3] *Gig WiFi*, XFINITY.COM, (last visited November 2, 2026), https://www.xfinity.com/gig.

32. Comcast further describes its "1 Gig" internet service as the "most reliable, fiber-powered WiFi" on the landing page of its Xfinity Internet website.[4] It uses the same disclosure technique described above.




33. Using "coaxial cable" rather than "copper" in these disclosures is also misleading to consumers, as most consumers are unlikely to know that "coaxial cable" is a copper-based connection—the very "copper-based alternative" that Comcast elsewhere on its website tells consumers delivers less consistent performance than

[4] *Xfinity Internet*, XFINITY.COM, (last visited November 2, 2026), https://www.xfinity.com/learn/internet-service.

fiber. Comcast's disclosure therefore does not dispel, and cannot cure, the false impression that the advertisements create.

**C. Comcast's "Fiber-Powered" claim is false and misleading.**

34. Comcast's "Fiber-Powered" claim deceives consumers in at least three ways. First, the phrase intentionally leverages the "halo effect" of 100% fiber services like AT&T's. Second, it creates the false impression that a consumer's internet service is connected to the premises by fiber alone. Third, the advertisements fail to adequately disclose the distinction between hybrid fiber-copper internet and 100% fiber.

35. Comcast delivers its "Fiber-Powered" internet and WiFi over a hybrid fiber-copper network in which fiber runs to a neighborhood "node," but copper coaxial cable, rather than fiber, runs from the node to the customer's home. This "last mile" architecture is technologically and functionally distinct from true fiber-to-the-home networks.

36. Comcast chose "Fiber-Powered" deliberately. Internet service is not "powered" by fiber in the first place. Fiber is merely a conduit—and in Comcast's case, it is only one of two conduits with markedly different characteristics. But the phrase allows Comcast to convey to consumers that its services use fiber alone without referencing its connection to the home via copper wires.

37. Comcast itself contrasts fiber connections with "copper-based alternative"[5] connections. A consumer told that the internet service in her home is "powered by fiber" reasonably expects all the benefits of 100% fiber internet that Comcast advertises. Because Xfinity's connection to the home is through a copper wire, Comcast's "Fiber-Powered" label conveys a false message.

38. True fiber-to-the-home networks, like AT&T Fiber, deliver fiber optic cables directly to the customer's premises through a dedicated, passive connection capable of lower latency, higher consistency, and superior performance during peak congestion. Comcast's hybrid fiber-copper network instead uses shared copper coaxial cable for the "last mile," which introduces active elements, such as amplifiers, nodes, and splitters, that can reduce reliability. Signal-to-noise ratio, spectrum availability, distance from the node, and the presence of legacy services affect hybrid fiber-copper performance, making it more complex and less consistent than fiber-to-the-home. These material differences affect consumers' actual service experience, including reliability, upload speeds, and latency during peak usage. Comcast's advertising deliberately obscures them.

39. Comcast knows the distinction matters to customers. On Comcast's website regarding "How to Choose a Home Internet Provider," Comcast lists

[5] *How to Choose a Home Internet Provider*, XFINITY.COM, (last visited November 3, 2026), https://www.xfinity.com/hub/internet/home-internet-buying-guide.

reliability, speed, and WiFi performance as "key factors to consider when shopping for a home internet plan."[6]

40. On the same page, Comcast states that "reliability might matter most" to customers and "[f]iber connections tend to offer more consistent performance than . . . copper-based alternatives, especially during peak usage hours." Further down on the page, Comcast states that "Xfinity offers the most reliable, fiber-powered WiFi," which "runs on a network built from fiber-powered infrastructure," but fails to disclose to customers that Xfinity Internet uses a "copper-based alternative" cable to connect to customers' homes rather than a fiber connection.

41. On a separate page, Comcast poses the question "What is Fiber-Powered Internet?" It answers that fiber-to-the-home is when a "[f]iber optic cable runs directly to the residence," whereas fiber-to-the-node, which is what Comcast offers, is when "[f]iber runs to a neighborhood node before connecting to homes using another type of cable, such as coaxial."[7]

42. Further down on that page, Comcast tacitly acknowledges the reliability gap between 100% fiber and the inferior hybrid copper-based service, noting that "fiber cables aren't impacted by electromagnetic interference the way traditional copper wiring can be," which makes fiber "a stronger, more consistent connection,"

---

[6] *How to Choose a Home Internet Provider*, XFINITY.COM, (last visited November 2, 2026), https://www.xfinity.com/hub/internet/home-internet-buying-guide.

[7] *What is Fiber-Powered Internet?*, XFINITY.COM, (last visited November 2, 2026), https://www.xfinity.com/hub/internet/fiber-powered-internet.

and "more resistant to other environmental factors like moisture and weather-related interference."

43. These are representations Comcast makes to consumers about the attributes consumers should weigh, and Comcast ties those attributes specifically to whether the connection is fiber or copper.

**D. Comcast's false advertising causes AT&T irreparable harm.**

44. Comcast's false and misleading advertising injures AT&T and consumers by distorting the market, diverting consumers from AT&T to Comcast, and inducing purchases based on false premises. In the highly competitive residential internet market, consumers who switch providers based on Comcast's false and misleading "Fiber-Powered" claim cause AT&T to lose revenue, customer lifetime value, and opportunities to cross-sell related services.

45. Speed, reliability, latency, and overall service quality are among the most important factors consumers weigh when choosing an internet service provider. Comcast's own consumer-facing materials link those considerations to fiber versus copper connections.

46. Accordingly, AT&T has invested substantial time and resources in developing and implementing a 100% fiber network for internet users across the country. AT&T Fiber provides the capacity, symmetrical upload and download speeds, low latency, and scalability that modern internet use increasingly demands, especially as consumers and businesses embrace bandwidth-intensive services like AI. Comcast's deployment of a 100% fiber network has lagged behind, so it has resorted to misleading consumers with the "Fiber-Powered" label until it catches up.

47. Comcast designed its claims to induce AT&T subscribers and other consumers to switch to or sign up with Comcast by falsely suggesting that its "Fiber-Powered" services are a 100% fiber service like AT&T's.

48. When a consumer switches providers, AT&T suffers immediate and often irreparable harm, including lost sales, lost customer relationships, and lost opportunities to cross-sell services.

49. Customer acquisition and retention of existing internet subscribers are critical to AT&T's business, hence AT&T's substantial investment in a cutting-edge 100% fiber network. Comcast's deceptive advertising compromises both.

50. Comcast's conduct has damaged and will continue to damage AT&T's goodwill, reputation, and competitive position. AT&T has no adequate remedy at law. Absent injunctive relief, it will continue to suffer irreparable injury.

## COUNT I

### False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)

51. AT&T incorporates by reference all the foregoing paragraphs as if fully set forth herein.

52. In connection with goods and services in interstate commerce, Comcast has knowingly made false or misleading descriptions and representations of fact about the nature, characteristics, and qualities of Comcast's goods, services, and commercial activities, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Comcast's advertising is disseminated in interstate commerce.

53. Calling Xfinity Internet and WiFi services "Fiber-Powered" is literally false. Comcast's internet service is delivered over a hybrid fiber-copper network in which the "last mile" connection to the customer's home uses copper coaxial cable, not fiber. That architecture is fundamentally different from true fiber-to-the-home services like AT&T Fiber, which deliver fiber optic cables directly to the customer's premises.

54. Describing that service as "Fiber-Powered," "Powered by fiber," and "the most reliable, fiber-powered WiFi"—particularly alongside Comcast's own representations that fiber connections outperform "copper-based" alternatives—is literally false or false by necessary implication. In that context, Comcast unambiguously conveys that Xfinity Internet is delivered to the home over fiber or is equivalent to fiber-to-the-home service, like AT&T Fiber.

55. In the alternative, if the claim is not literally false, it is impliedly false and misleading because it deceives or has the capacity to deceive a substantial segment of reasonable consumers into believing that Xfinity Internet is delivered to the home over fiber alone.

56. Comcast made those false or misleading descriptions or representations of fact in advertising in a manner material to the public's decision to purchase such products.

57. AT&T and Comcast directly compete in the relevant internet-service space, and Comcast's false advertising deceives a substantial number of consumers.

58. Comcast's false and misleading statements about its goods, services, and commercial activities have damaged AT&T's goodwill and reputation and harmed its competitive position.

59. AT&T has suffered irreparable harm to its goodwill, reputation, and competitive position and lacks an adequate remedy at law. It will continue to suffer irreparable injury unless this Court enjoins Comcast's false claims under 15 U.S.C. § 1116.

60. Comcast has profited and will continue to profit from sales driven by consumers' reliance on false claims about the nature, qualities, and characteristics of its internet service.

61. Under 15 U.S.C. § 1117, AT&T is entitled to recover actual damages in an amount to be determined at trial, enhanced damages, a finding that this is an exceptional case, and all costs and attorneys' fees incurred by AT&T in this action.

## COUNT II

### False Advertising in Violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

62. AT&T incorporates by reference all the foregoing paragraphs as if fully set forth herein.

63. Comcast's conduct constitutes false and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.* (the "California FAL"). For example, Comcast advertised falsely by making false and misleading statements that were material and tended to deceive consumers, injuring AT&T in the market.

64. Comcast knew its advertising was false and misleading, or it acted with reckless disregard for, or willful blindness to, the false or misleading nature of its advertising.

65. Unless enjoined by this Court, Comcast will continue to mislead consumers and irreparably injure AT&T, its goodwill, and its market share. AT&T, thus, is entitled to permanent injunctive relief.

66. Comcast should be required to restore to AT&T any and all profits earned as a result of its false and misleading advertising or provide AT&T with any other restitutionary relief the Court deems appropriate.

## COUNT III

### Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

67. AT&T incorporates by reference all the foregoing paragraphs as if fully set forth herein.

68. Comcast's conduct constitutes unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* (the "California UCL").

69. Comcast's conduct constitutes an unlawful business practice because, as described, Comcast's conduct violates 15 U.S.C. § 1125(a)(1)(B) and the California FAL.

70. Additionally, Comcast's conduct constitutes a fraudulent business act or practice. As described in the examples above, Comcast advertised falsely by making false and misleading statements that were material and tended to deceive consumers, injuring AT&T in the market. For example, Comcast's false advertising

misrepresents Xfinity Internet and WiFi services as "Fiber-Powered" despite Comcast's internet service being delivered over a hybrid fiber-copper network in which the "last mile" connection to the customer's home uses copper coaxial cable, not fiber.

71. Further, Comcast's conduct constitutes an unfair business act or practice. Comcast's willfully false and misleading advertising, as described above, including its false statements regarding its "Fiber-Powered" Xfinity Internet and WiFi services, violates the policy and spirit of fair competition and significantly threatens or harms competition.

72. Unless enjoined by this Court, Comcast will continue to mislead consumers and irreparably injure AT&T, its goodwill, and its market share. AT&T, thus, is entitled to permanent injunctive relief.

## PRAYER FOR RELIEF

AT&T respectfully requests that the Court enter judgment against Comcast and grant the following relief:

1. Judgment declaring that Comcast has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);
2. Judgment that Comcast has advertised falsely in violation of the California FAL;
3. Judgment that Comcast has competed unfairly in violation of the California UCL;

4. Permanent injunctive relief, pursuant to 15 U.S.C. § 1116, enjoining Comcast and its officers, agents, servants, employees, and all those acting in concert with it from disseminating false and misleading advertising claims as set forth herein in any form or medium, and requiring Comcast to cease describing its hybrid fiber-coaxial service as "Fiber-Powered";

5. An Order directing Comcast to account to AT&T for all gains, profits, and advantages obtained by Comcast because of the false advertising campaign and unfair competition and awarding AT&T disgorgement of Comcast's profits in the amount of such unlawful gains;

6. An Order awarding to AT&T all actual damages resulting from Comcast's unlawful conduct in an amount to be determined at trial and increased and enhanced in this Court's discretion pursuant to 15 U.S.C. § 1117;

7. An Order awarding to AT&T enhanced damages as permitted under 15 U.S.C. § 1117 and finding that this is an exceptional case due to the intentional nature of Comcast's false advertising;

8. An Order awarding to AT&T restitution;

9. An Order awarding pre-judgment and post-judgment interest at the maximum rate allowed by law;

10. An Order requiring Comcast to pay AT&T's costs, attorneys' fees, and expenses;

11. A declaration that this action resulted in the enforcement of an important right affecting the public interest, and awarding attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5; and

12. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

AT&T hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury on all issues so triable.

Dated: November 13, 2026

Respectfully submitted,

**REESE MARKETOS LLP**

*/s/ Margaret D. Terwey*

Margaret D. Terwey (CA SBN 322798)
margaret.terwey@rm-firm.com
Pete Marketos (*pro hac vice* forthcoming)
pete.marketos@rm-firm.com
Tyler J. Bexley (*pro hac vice* forthcoming)
tyler.bexley@rm-firm.com
William J. Hamilton (*pro hac vice* forthcoming)
will.hamilton@rm-firm.com
Alexander M. Nowakowski (*pro hac vice* forthcoming)
alex.nowakowski@rm-firm.com
750 N. Saint Paul St., Suite 600
Dallas, Texas 75201
Telephone: (214) 382-9810

*Attorneys for Plaintiffs AT&T Teleholdings, Inc. and AT&T Wireline Holdings, LLC*